IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| AE LIQUIDATION, INC., *et al.*, | : | |
| | : | Bankr. Case No. 08-13031-MFW |
| Debtors. | : | |
| | : | Adv. Pro. No. 10-55543-MFW |
| JEOFFREY L. BURTCH, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff/Appellee, | : | Civ. No. 16-252-LPS |
| v. | : | |
| | : | |
| PRUDENTIAL REAL ESTATE AND | : | |
| RELOCATION SERVICES, INC., *et al.*, | : | |
| | : | |
| Defendants/Appellants. | : | |

## **MEMORANDUM**

Pending before the Court is the Prudential[1] Appellants' appeal (D.I. 1) from the

Bankruptcy Court's Opinion and Order, *Burtch v. Prudential Real Estate and Relocation Servs.,*

*Inc., et al. (In re AE Liquidation, Inc.)*, 2016 WL 1238848 (Bankr. D. Del. Mar. 29, 2016)

("Remand Order"). For the reasons that follow, the Court will affirm the Remand Order.

### I. BACKGROUND

Eclipse Aviation Corporation ("Eclipse"), a manufacturer of private jets, engaged

Prudential to provide relocation benefits to its employees under a Relocation Services Agreement.

On November 25, 2008 ("Petition Date"), Eclipse filed its voluntary petition for relief under

chapter 11 of the Bankruptcy Code. On March 5, 2009, the case was converted to chapter 7, and

Trustee was appointed. In November of 2010, Trustee filed a complaint against Prudential

asserting that twelve transfers made by Eclipse to Prudential within the ninety days preceding the

---

[1] Prudential Real Estate and Relocation Services, Inc. and Prudential Relocation, Inc. will be
collectively referred to as "Prudential."

Petition Date ("Preference Period"), totaling $781,702.61, were preferential and avoidable under § 547(b) of the Bankruptcy Code. Prudential asserted affirmative defenses under the Bankruptcy Code, including § 547(c)(2)'s ordinary course defense,[2] and § 547(c)(4)'s new value defense.[3]

In March of 2013, the Bankruptcy Court held a two-day trial in the adversary proceeding. The parties agreed that Prudential had a new value defense but disputed the amount. Trustee conceded new value totaling $56,057.42, while Prudential asserted $128,379.40 of new value was provided to Eclipse following the Petition Date. Prudential's Director of Accounting, Ms. Williams-Varner, prepared a chart setting forth the services rendered to Eclipse after September 2, 2008 (the date of first Preference Period transfer) and the corresponding invoices. (*See* 3/12/13 Tr. at 101) Trustee argued that 21 invoices dated March 5, 2009, in total amount of $71,808.03, for household goods insurance charges ("Subject Invoices"), did not constitute new value because Prudential failed to prove the dates on which the services were actually provided. *See In re First Jersey Sec., Inc.*, 180 F.3d 504, 511 (3d Cir. 1999) (holding that debt arises at outset of services, not when invoice for services is issued). Ms. Williams-Varner testified that in

---

[2] Section 547(c)(2) provides a "safe harbor" for a transferee of a preferential payment if "such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee," and such transfer was (a) "made in the ordinary course of business or financial affairs of the debtor and transferee," or (b) "made according to ordinary business terms." 11 U.S.C. § 547(c)(2).

[3] Section 547(c)(4) provides:

> The trustee may not avoid under this section a transfer—
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>> (A) not secured by an otherwise unavoidable security interest; and
>> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor . . .

11 U.S.C. § 547(c)(4).

2

providing household goods insurance, Prudential paid the insurance premium to the insurance carrier at the time of closing on the sale of the employee's home. (*See* 3/12/13 Tr. at 102:18-103:8; 104:14-22; 106-07) The invoice to Eclipse for those services was generated one week after that closing. (*Id.* at 104) Additionally, Ms. Williams-Varner verified her conclusions by reference to Prudential's internal computer systems and did not include any services as new value unless she was "a hundred percent sure." (*Id.* at 105-06) On the basis of this testimony, Prudential argued that it had satisfied its burden under § 547(c)(4) to establish the date services were provided to Eclipse with respect to household goods insurance – one week before the March 5, 2009 invoice date. Trustee did not cross-examine Ms. Williams-Varner on this issue.

On July 17, 2013, the Bankruptcy Court issued its decision. *See Burtch v. Prudential Real Estate and Relocation Servs., Inc., et al. (In re AE Liquidation, Inc.)*, 2013 WL 3778141 (Bankr. D. Del. July 17, 2013) ("Prior Order"). The Bankruptcy Court determined that Prudential had proven its new value defense in the full amount of $128,379.40 (to be applied against preferential transfers of $781,702.61). *See id.* at *11. The Bankruptcy Court found Ms. Williams-Varner's testimony on the Subject Invoices to be "persuasive and uncontested" and that the services "were performed approximately one week before [the invoice date of] March 5, 2009." *Id.* at *10. Crediting the full amount of Prudential's new value defense, the Bankruptcy Court granted judgment in favor of Trustee in the amount of $653,323.20.[4]

Both parties appealed the Prior Order to this Court. *See Burtch v. Prudential Real Estate and Relocation Servs., Inc., et al. (In re AE Liquidation, Inc.)*, 2015 WL 5301553 (D. Del. Sept. 10, 2015). Trustee argued that the Bankruptcy Court erred by including the Subject Invoices in

---

[4] The Prior Order also determined that Prudential had failed to prove its ordinary course of business defense. *See AE Liquidation*, 2013 WL 3778141 at *10. The Prior Order did not include a ruling on Trustee's request for prejudgment interest.

3

its calculation of Prudential's new value defense because even if the services set forth in the
Subject Invoices were provided a week before the March 5, 2009 invoice date, as its witness
testified, those services were still provided *after* the Petition Date (November 25, 2008), and
post-petition transfers cannot qualify new value. Prudential argued that Trustee had waived this
argument by waiting to raise it on appeal, but the Court determined that Trustee had included the
argument in its post-trial briefing. *See id.* at *6 n.8. The Court further agreed with Trustee that
only services provided prior to the Petition Date are included for purposes of new value under
§ 547(c)(4), based on the Third Circuit's guidance in *In re Friedman's Inc.*, 738 F.3d 547, 549
(3d Cir. 2013). *See id.* *6-*7. Because services provided one week before March 5, 2009 would
have occurred after the Petition Date, and because the Prior Order did not distinguish between
services rendered pre-petition and post-petition for the purpose of calculating Prudential's new
value defense, the Court remanded the matter to the Bankruptcy Court to "reexamine [the
Subject Invoices] to determine the appropriate amount of Prudential's new value defense."[5] *See
id.* at *7.

Thereafter, at a court-ordered status conference, the Bankruptcy Court asked the parties
how they wished to proceed in addressing the issues on remand. (*See* D.I. 10-2, 10/14/15 Tr. at
4:16) Prudential's counsel requested that the Bankruptcy Court consider reopening the record to
clarify its witness' testimony on the Subject Invoices, and Trustee opposed the request. (*See id.*
at 4-6) Based on the parties' characterization of the issue on remand, the Bankruptcy Court
stated, "I think it's just a matter of going to the record . . ." (*Id.* at 6:13-15) Prudential did not
file a motion to reopen the record. On October 27, 2015, the parties filed a stipulated briefing

---

[5] The Court also directed the Bankruptcy Court to "explain its reasoning for denying the
Trustee's request for prejudgment interest . . . or, alternatively, to award such interest." *AE
Liquidation*, 2015 WL 5301553, at *8.

4

schedule, and briefing by Trustee and Prudential was completed on January 15, 2016. Based on

the chart and trial testimony, Trustee asserted that the Subject Invoices related to services

rendered after the Petition Date and should not have been taken into account in calculating

Prudential's new value defense. Prudential argued that the Subject Invoices dated March 2009

were prepared solely in support of its proof of claim and did not reflect the date that the

underlying services were actually rendered to Eclipse.

On March 29, 2016, the Bankruptcy Court issued the Remand Order. In setting forth the

procedural history, the Bankruptcy Court noted that, with respect to both the new value and

prejudgment interest issues, "[t]he parties agreed that no additional evidence was required on

either point and the matter could be decided after additional briefing." *AE Liquidation*, 2016 WL

1238848, at *1. The Bankruptcy Court determined that, contrary to Prudential's assertion, its

witness "testified that the date the services underlying the invoices were rendered occurred one

week prior to the [March 2009] invoice date." *Id*. at *2 (citing 3/12/13 Tr. at 101-02). The

witness "also testified unambiguously that the dates included in [Prudential's chart] correspond

with the actual invoice dates." *Id*. (quoting 3/12/13 Tr. at 105:22-106:8). On this basis, the

Bankruptcy Court determined that the amount of the new value defense should be reduced from

$128,379.40 to $56,571.37 to reflect only services provided pre-petition.[6] *See id*. at *2. On

April 11, 2016, Prudential filed its notice of appeal regarding the Remand Order. (*See* D.I. 1)

## II.    CONTENTIONS

Prudential argues that the Remand Order was entered in error because "[t]he Bankruptcy

Court's decision to eliminate the Subject Invoices from Prudential['s] new value defense is

---

[6] The Bankruptcy Court also awarded $5,186.97 in prejudgment interest. *See AE Liquidation*,
2016 WL 1238848 at *4.

explicitly based on the incorrect premise that Prudential *did not* want to reopen the factual record

to clarify [Ms. Williams-Varner's] testimony . . ." and wanted to rely on the factual record

established at trial. (*See* D.I. 9 at 6)  Because Prudential made a request to reopen the record at

the status conference, Prudential argues "[t]his issue alone warrants remand." (*Id.*)  Conversely,

Trustee argues that Prudential waived its right to seek to reopen the record because it filed no

motion to reopen following the status conference and proceeded with briefing. (*See* D.I. 10 at 3)

   Prudential further argues that the Bankruptcy Court erred in denying Prudential's request

to reopen the record for the purpose of clarifying its witness' testimony. (*See* D.I. 9 at 6-7)

According to Prudential, in testifying as to the information contained in the chart, the Bankruptcy

Court expressed its preference that Prudential not go through each individual invoice:

> Q.   Okay.  Let's go through, if we could, each one of these.  We had ended on – the
> last one we looked at 0445.
>
> THE COURT:   Do we have to do every single one of them?
>
> MR. CLASEN:   Hopefully not.  Thank you.

(3/12/13 Tr. at 106:9-13)  Prudential argues that, at the Bankruptcy Court's request, its counsel

attempted to set forth evidence supporting its new value defense in a summary fashion, and did

not go through each individual invoice. (*See* D.I. 9 at 7)  Prudential argues that because Trustee

neither cross-examined its witness with respect to this issue nor offered any evidence or

argument to demonstrate that the Subject Invoices included post-petition services, Prudential was

denied the opportunity to refute the argument. (*See id.*)  Had it been permitted to submit

additional evidence, Prudential argues that its witness would have provided "more detailed

testimony as to the Subject Invoices [to] explain why they were, indeed, for services rendered

pre-petition." (*Id.* at 1)  According to Prudential, the Bankruptcy Court's denial of this

opportunity has resulted in obvious prejudice. (*See id.* at 7)  Conversely, Trustee argues that the

facts and circumstances of this case do not warrant reopening the record. (*See* D.I. 10 at 4).

Trustee argues that Ms. Williams-Varner's "persuasive and uncontested" testimony made clear that she verified the Subject Invoices, relied on them in preparation of Prudential's defenses, and that the services – rendered a week before the March 2009 invoice dates – were rendered post-petition. (*See id.* at 4-6)

## III.  JURISDICTION AND STANDARDS OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. Pursuant to § 158(a)(1), the Court has mandatory jurisdiction over this appeal, which is a final judgment of the Bankruptcy Court. 28 U.S.C. § 158(a)(l). This Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Whether the record should be reopened to allow a party to submit additional evidence is within the discretion of the trial court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331-32 (1971).

## IV.  DISCUSSION

According to Prudential, the Bankruptcy Court considered the issue of whether the Subject Invoices included services rendered post-petition based on an incorrect belief that Prudential wanted to rely on the factual record established at trial, despite Prudential's request to reopen the record. (*See* D.I. 9 at 6) At the status conference, the Bankruptcy Court asked how

7

the parties wanted to proceed in addressing the Remand Order. *(See* D.I. 10-2, 10/14/15 Tr. at

4:16) Prudential's counsel stated:

> With respect to New Value, the District Court indicated that there was a lack of clarity on the issue. What . . . Prudential would request would be that the Court consider reopening the record with respect to that and just getting, you know, clarification from the witness on that particular issue.

*(Id.* at 5:6-11) Trustee opposed the request, stating that "Trustee doesn't read any confusion on

the part of the District Court" and "the record's already been closed." *(Id.* at 5:12-15) Prudential

responded that the matter had been remanded based on the observation that the Bankruptcy

Court's calculation may have erroneously inflated the proper amount of Prudential's new value

defense, and on this basis, it was appropriate to request clarification from Prudential's witness.

*(See id.* at 5:16-6:4) In turn, Trustee argued that there was "no confusion" with respect to the

Subject Invoices – "like [the witness] said, they occurred one week before" *(id.* at 6:8-10) – and

that the issue on remand was merely one of "break[ing] down which ones were pre-petition and

which ones were post-petition." *(Id.* at 6:11-12, 7:2-4) Based on the parties' characterization of

the issue, the Bankruptcy Court stated:

> I think it's just a matter of going to the record . . . [T]he error was in considering post-petition new value, and if [the parties] just lay out . . . what the post-petition new value was and deduct that from the . . . new value I found, I think that would handle that issue.

*(Id.* at 6:13-23) At that point, the status conference turned to the briefing schedule.

The transcript reflects that the parties characterized the issue on remand as a simple one –

whether services were rendered pre-petition or post-petition based on the invoice dates set forth

in the record. Because there was "no confusion" that services were rendered one week before

the invoice date, and the invoice date could be extracted from the documents already in the

record, it followed that no additional evidence was required, and there was no need to reopen the

record. Contrary to the exchange reflected in the transcript, Prudential now takes the position

that the evidence in the record was not sufficient to establish when services were provided. The factual issue that Prudential now argues it was denied the opportunity to clarify – that the services set forth in the Subject Invoices were, indeed, all rendered pre-petition, and the only reason those invoices are dated in March 2009 is because they were generated in support of Prudential's proof of claim – was never communicated to the Bankruptcy Court at the status conference. Prudential did not argue that this factual issue could only be resolved by reopening the record or argue that such clarification was critical to its new value defense. Nor did Prudential file a separate motion requesting relief following the status conference. Instead, Prudential merely asked the Bankruptcy Court to "consider" reopening the record, and it is clear the Bankruptcy Court did "consider" doing so, but exercised its discretion not to reopen it.

Even if Prudential had clearly set forth this issue as the basis for its request to reopen the record, the Court would find no abuse of discretion in the Bankruptcy Court's decision to deny the request. Whether the record should be reopened to allow a party to submit additional evidence is within the discretion of the trial court. *See Zenith*, 401 U.S. at 331-32. In deciding whether to reopen a case to take additional testimony, a court should consider (i) the burden, if any, on the parties and their witnesses, (ii) whether undue prejudice may result if the relief is not granted, and (iii) concerns about judicial economy. *See Rochez Bros.. Inc. v. Rhoades,* 527 F.2d 891, 894 n.6 (3d Cir. 1975); *see also Joy Tech., Inc. v. Flakt, Inc.*, 901 F. Supp. 180, 181 (D. Del. 1995) ("The trial court should consider the motion to reopen in light of all the surrounding circumstances and either grant or deny it in the interest of fairness and substantial justice.") (internal quotations omitted).

Prudential argues that its counsel set forth the evidence supporting its new value defense in a summary fashion based upon the Bankruptcy Court's direction. (*See* D.I. 9 at 7) Had it

9

instead addressed each individual invoice at trial, Prudential argues that it would have elicited testimony clarifying that the Subject Invoices were for services rendered pre-petition. Because Trustee neither cross-examined the witness with respect to this issue nor offered any evidence or argument to demonstrate that the Subject Invoices included post-petition services, Prudential argues that it was denied the opportunity to refute the argument. (*See id.* at 6-7)  On these bases, Prudential seeks reversal of the Remand Order or, alternatively, remand to the Bankruptcy Court with instructions to reopen the record. (*Id.* at 8)

Prudential blames the Bankruptcy Court and the Trustee for its failure to establish an essential element of its defense. However, once Trustee made a *prima facie* showing that the Subject Invoices constituted preferential transfers under § 547(b), the burden shifted to Prudential to establish each element of its affirmative defense. *See* 11 U.S.C. § 547(g) (creditor against whom avoidance is sought has burden of proving non-avoidability of transfer under § 547(c) defense). To carry its burden of establishing new value, Prudential was required to prove the date on which services were rendered to Eclipse, and invoice dates were not sufficient. *See First Jersey Sec.,* 180 F.3d at 511 (debt arises when legal services are provided, not when invoice is issued). Notwithstanding the Bankruptcy Court's preference that Prudential present its evidence without going through every single invoice, it remained Prudential's burden to establish that services constituting new value were rendered before the Petition Date. Prudential had a full and adequate opportunity to set forth this evidence during a two-day trial, and its failure to do so did not warrant reopening the record, four years after trial, especially in light of the burden this would impose on the Trustee and considerations of judicial economy. In light of the foregoing facts and circumstances, the Court cannot find that the Bankruptcy Court abused its discretion in denying Prudential's request to reopen the record.

## V.     CONCLUSION

For the foregoing reasons, the Court will affirm the Remand Order.  An appropriate

Order follows.

*Leonard P. Stark*

March 30, 2017                                         HONORABLE LEONARD P. STARK
Wilmington, Delaware                              UNITED STATES DISTRICT JUDGE

11